UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAYLA DERENNE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:13-cv-0183 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the Court will grant in part plaintiff's motion for summary judgment and will deny the Commissioner's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on June 4, 2009, alleging a disability onset date of June 1, 2003.[1]   Administrative Record ("AR") 143 (Application Summary for DIB) and

---

[1] At the hearing, plaintiff, through her attorney, requested that the alleged onset date be changed to July 1, 2007.  See Administrative Record ("AR") 11.

1

140 (Application Summary for SSI).[2]  Plaintiff's applications were denied initially and again upon reconsideration.  AR 74, 80.  On December 9, 2010, a hearing was held before administrative law judge ("ALJ") Theodore T. N. Slocum.  AR 25-69.  Plaintiff, her mother, and a vocational expert testified at the hearing.  Id.  On February 25, 2011, the ALJ issued an unfavorable decision finding plaintiff not disabled.[3]  AR 11-19.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

---

[2] The application summaries from the Social Security Administration indicate that plaintiff filed both applications on June 4, 2009.  See AR 140, 143.  However, the ALJ's decision provides May 15, 2009 as the date plaintiff filed her SSI application.  While the court notes the discrepancy, it is of no consequence to the pending cross-motions for summary judgment.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to the fifth step.  Id.

    2. The claimant has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date.

    3. The claimant has the following severe impairment: Lyme's disease.

    4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c).

    6. The claimant is capable of performing past relevant work as a sales associate and a caregiver. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

    7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision.

AR 13-19.

Plaintiff requested that the Appeals Council review the ALJ's decision, but the Council denied review on December 4, 2012, thereby leaving the ALJ's decision as the final decision of the Commissioner. AR 1-3.

## FACTUAL BACKGROUND

Born on June 14, 1989, plaintiff was eighteen years old on the alleged onset date of disability and twenty-one years old at the time of the administrative hearing. AR 32, 34. Plaintiff has a high school diploma. AR 32. Plaintiff last worked in 2009 as a sales associate at a UPS store, but she left that job because she fainted at work, an ambulance was called, and she was then placed on disability. AR 33. She worked at a Gottschalks department store from age 16 through 17, but she left that job because she "missed too much work" due to Lyme disease. AR 34-35. Plaintiff worked as a caregiver for a disabled person from August 2007 to January 2008; she also left that job because she "missed too much work." AR 35.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Morgan v. Comm'r of the Soc. Sec.

1  Admin., 169 F.3d 595, 599 (9th Cir. 1999).

2  The findings of the Commissioner as to any fact, if supported by substantial evidence, are
3  conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is
4  more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th
5  Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a
6  conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.
7  N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute
8  substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v.
9  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

10  Although this court cannot substitute its discretion for that of the Commissioner, the court
11  nonetheless must review the record as a whole, "weighing both the evidence that supports and the
12  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and
13  Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th
14  Cir. 1985).

15  "The ALJ is responsible for determining credibility, resolving conflicts in medical
16  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)
17  (citations omitted). "Where the evidence is susceptible to more than one rational interpretation,
18  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.
19  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons
20  stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not
21  rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d
22  871, 874 (9th Cir. 2003).

23  The court will not reverse the Commissioner's decision if it is based on harmless error,
24  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
25  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.
26  2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
27  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

28  ////

ANALYSIS

Plaintiff seeks summary judgment on the grounds that the ALJ erred in (1) failing to provide specific reasons for assigning minimal probative weight to the opinion of a treating physician, (2) finding not credible plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, (3) failing to address the credibility of plaintiff's mother, Mrs. DeRenne, and the probative value of her lay testimony, (4) failing to obtain testimony from a vocational expert, (5) failing to establish that there is other work in the national economy that plaintiff can perform, and (6) ignoring and failing to reference evidence in the decision. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error.

A.   Opinion of Plaintiff's Treating Physician, Dr. G. Franco

   1.   Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by a treating, examining, or non-examining doctor. See Lester, 81 F.3d at 831. Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). As such, superior weight should be given to the opinion of a treating source, who has a greater opportunity to know and observe the patient as an individual. See Lester, 81 F.3d at 831; Smolen, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. See Lester, 81 F.3d at 830; 20 C.F.R. § 416.927(d)(1).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers the presence of contradictory opinions in the record and whether clinical findings support the opinions. See Lester, 81 F.3d at 829-31. An ALJ may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id. at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded

superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion).

2. Relevant Background

a. Dr. Franco's Treatment Record

Between February 12 and March 10, 2010, plaintiff received intensive treatment for muscle pain and fatigue in a specialized medical program under the care of Dr. G. Franco. See AR 495-528. These records consist of sixteen of Dr. Franco's treatment notes as well as multiple laboratory results. Dr. Franco's February 12, 2010 treatment note, in particular, summarizes plaintiff's medical records, her allegations of pain, plaintiff's prescription medication, and the results of Dr. Franco's physical examination of plaintiff. AR 496-98. Plaintiff described her pain as achy or stabbing, which she assigned a ten on a ten-point scale of intensity. She indicated that her pain can sometimes be worse at night and nothing seems to help including pain medications. The note also mentions plaintiff's cardiac issues, hospitalization, headaches, possible partial seizures, and fainting at work. The note also provides that seven different oral medications and months of nutritional protocols have not helped plaintiff.

This February 12, 2010 treatment note further delineated the laboratory tests that Dr. Franco ordered, which included female hormone panel, fibrinogen activity, serum PTT, CBC with complete differential and platelet count, chem panel basic, thyroid panel, ANA, vitamin D3, RBC elements, and urinary toxic metals. AR 497. Dr. Franco's procedures consisted of sixteen treatments of injectable glutathione, sixteen treatments of hemato-oxygen therapy, eight treatments of injectable hydrogen peroxide, eight treatments of high dose vitamin C, sixteen treatments of injectable nano-particle silver, and six treatments of injectable phosphatidylcholine. AR 497-98. Dr. Franco also prescribed transfer factor LymPlus, NT Factor Energy, Ribose Energy, siliphos, and meriva-SR. AR 498.

Based on this intensive treatment, Dr. Franco completed the Lyme Disease Residual Functional Capacity Questionnaire on December 1, 2010. AR 437-41. Dr. Franco noted that plaintiff suffers from Lyme Disease, as well as tachycardia, fatigue, depression and anxiety; that she has seen multiple specialists and been to the emergency room multiple times with no results; that she is not a malingerer; that she has symptoms including pain, myalgia, fatigue, body aches, muscle pain, malaise, joint swelling, fainting spells, and joint pain in the knees and hips; and that she suffers from severe pain. He also noted that her symptoms and functional limitations are consistent with her impairments; that the symptoms are severe enough to interfere with plaintiff's attention and concentration often; and that she has marked limitations in her ability to deal with work stress. Dr. Franco indicated that plaintiff's pain medication would affect plaintiff's ability to work because they cause fatigue, drowsiness and sometimes nausea.

Regarding plaintiff's functional limitations, Dr. Franco opined that plaintiff can sit/stand or walk for about 4 hours in an 8-hour workday, can walk 2 city blocks without rest, can sit for 1-2 hours continuously, and can stand / walk for 45 minutes continuously. He noted that plaintiff would need a job that permits shifting positions at will and that she would sometimes need to take unscheduled breaks. He ultimately determined that plaintiff can frequently lift and carry 10 pounds, can occasionally lift and carry 20 pounds, and can never lift and carry 50 pounds. Plaintiff would be able to grasp, turn and twist objects 40% of an 8-hour workday, perform finger manipulations 70% of an 8-hour workday, and lastly, reach 20% of an 8-hour workday. He indicated that plaintiff's impairments would likely produce "good days" and "bad days," and that she would likely be absent from work as a result of her impairments more than four times a month.

### b.     The ALJ's Decision

The ALJ summarized the contents of the questionnaire completed by Dr. Franco as follows:

> Dr. Franco noted tachycardia, fatigue, depression and anxiety. He reported that the claimant had been seen by multiple specialists and had been to the emergency room multiple times with no result. He stated that the pain is mostly in the legs and arms and that pain medication causes fatigue and drowsiness and occasional nausea.

> Dr. Franco opined that the claimant is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for four hours in an eight-hour day, continuously for 45 minutes; and sit for four hours in an eight-hour day, continuously for two hours. He determined that the claimant needs the opportunity to sit or stand at will; take a break every hour for 10 minutes; and elevate her legs to pillow height for 20 minutes with a heating pad for 20% of the workday. He noted that the claimant can handle for 40%, finger for 70%, use her arms for 20%, bend for 5%, and twist for 40% of the workday and would likely be absent for more than four times a month.

AR 17. The ALJ then assigned minimal weight to Dr. Franco's assessment "as his opinion is not based on specific objective findings found during a thorough examination, but rather draws inferences from the claimant's history and subjective complaints that were garnered over a treatment period of only one month." Id. The ALJ also stated that, despite the administration of injections, Dr. Franco provided little description of plaintiff's current condition other than noting that there were no complications of the treatment he provided. Id. at 18.

The ALJ assigned more probative weight to Dr. Kristof Siciarz's internal medicine evaluation in January 2010 and Dr. Sobkowicz's assessment of plaintiff in August 2010. AR 17. The ALJ summarized Dr. Siciarz's report:

> Dr. Siciarz noted the claimant's history of Lyme's disease. Upon examination, the claimant appeared to be in no distress. There was only body tenderness to palpation in the muscle groups of the legs. There was no paraspinal spasm. Straight-leg raising test was negative bilaterally at 90 degrees, both sitting and supine. Range of motion was normal bilaterally as was lateral flexion, extension and forward flexion. There was no joint deformity or evidence of inflammation. The claimant was oriented to time, place and person. Affect and memory were normal and responses were appropriate. Gait was within normal limits and there was not ataxia evident. Muscle strength was 5/5 in the upper and lower extremities. Sensation was grossly intact and symmetrical bilaterally. Dr. Siciarz noted that other than leg tenderness, gait was normal. He reported that hypertension is well controlled. Dr. Siciarz assessed an ability to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours cumulatively in an eight-hour day; and sit without restrictions. He determined that pushing and pulling are unlimited, other than shown for lifting and carrying and postural, visual, communicative and environmental function is unlimited in all aspects.

AR at 17. The ALJ accorded great weight to Dr. Siciarz's report, finding it "persuasive, consistent with the record and well supported by objective findings." Id.

8

The ALJ further found that Dr. Sobkowicz examined plaintiff in August 2010 "with results and conclusions consistent with those of Dr. Siciarz, showing that the claimant is a relatively healthy individual." AR 17. The ALJ summarized Dr. Sobkowicz's report:

> Dr. Sobkowicz reported complaints of ongoing chest pain, pressure and palpitations and two episodes of syncope. She noted no known hyperlipidemia, hypertension or diabetes and a continuation of Percocet and Ibuprofen for leg pain. Upon examination, the carotids were +2 and equal bilaterally. There was no bruits or JVD. The lungs were clear. Cardiac rate and rhythm were regular. The abdomen was soft and nontender without organemegaly. Her extremities showed no clubbing, cyanosis or pitting edema. Peripheral pulses were 4+ and equal bilaterally. Neurological examination was without gross lateralizing signs. Dr. Sobkowicz noted that the Pain Clinic had concerns about the claimant's lack of exercise.

Id.

### 3. Analysis

At the outset, the Court notes that Dr. Franco is a treating physician, and Dr. Siciarz and Dr. Sobkowicz are examining physicians. See AR 437 (noting that plaintiff was Dr. Franco's patient from February 2010 to March 2010); AR 420 (Dr. Siciarz's "summary report of an Internal Medicine Evaluation"); AR 443 (Dr. Sobkowicz describing her "cardiology consultation"). Given these clinical relationships with plaintiff, the ALJ was required to assign superior weight to or properly reject Dr. Franco's medical opinion. See Carmickle, 533 F.3d at 1164; Lester, 81 F.3d at 831; Smolen, 80 F.3d at 1285.

####     a.    Do the Medical Opinions Contradict Each Other?

The initial question before the Court is whether the opinion of Dr. Franco was indeed contradicted by the opinions of Drs. Siciarz and Sobkowicz. This question is important because the law distinguishes between the opinions of treating physicians that are contradicted and those that are not. See Lester, 81 F.3d at 829-31. Certainly, there is a discrepancy between Dr. Franco's opinion and Dr. Siciarz's opinion with respect to plaintiff's functional limitations, but the contrast between Dr. Franco's opinion and that of the examining physicians is less stark than the ALJ's decision suggests. Regardless, since Dr. Siciarz's opinion contradicted Dr. Franco's opinion with respect to functional limitations, the Court will analyze whether the ALJ provided

1   specific and legitimate reasons supported by substantial evidence for rejecting Dr. Franco's

2   opinion.  Lester, 81 F.3d at 830.

3       b.  Dr. Franco's Treatment Records

4     While an ALJ may properly rely upon only selected portions of a medical opinion while

5   rejecting other parts, see, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's

6   supported reliance on selected portions of conflicting opinion constitutes substantial evidence),

7   such selective reliance must be consistent with the medical record as a whole.  See, e.g., Edlund

8   v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report

9   that is clearly reliable).  Moreover, although "[a]n ALJ is not entitled to pick and choose through

10  a physician's opinion," Sklenar v. Barnhart, 195 F. Supp. 2d 696, 703 n.6 (W.D. Pa. 2002)

11  (citations and quotation omitted), he may give specific and legitimate reasons for declining to

12  adopt part of an opinion.  See Magallanes, 881 F.2d at 755 (declining to adopt physician's

13  opinion about onset date).  Here, the ALJ did not provide specific or legitimate reasons for

14  declining to adopt the most important aspects of Dr. Franco's opinions.

15    The ALJ did not make an explicit finding on the probative weight of Dr. Sobkowicz's

16  opinion, but assigned "great weight" to Dr. Siciarz's opinion, because it was "persuasive,

17  consistent with the record and well supported by objective findings . . . ."  AR 17.  The ALJ's

18  assignment of weight appears to rest largely on his finding that Dr. Sobkowicz, reached "results

19  and conclusions consistent with those of Dr. Siciarz."  Id.  The ALJ's summary of these opinions,

20  though, is not entirely accurate.  The ALJ omits Dr. Siciarz's statements regarding plaintiff's

21  "chronic leg pain" in the years following her antibiotic treatment, plaintiff's "tenderness to

22  palpation of all muscle groups of the legs," plaintiff's "multiple emergency room visits" for leg

23  pain, and that plaintiff's "functional capacity is limited . . . due to pain."  AR 420-21, 424.  The

24  ALJ's summary of Dr. Sobkowicz's opinion is even more selective: it omits Dr. Sobkowicz's

25  description of plaintiff's atypical, severe, and recurrent chest pain, as well as the physician's

26  statement that plaintiff is "disabled."  AR 443-44.  And while the ALJ's summary noted Dr.

27  Sobkowicz's observation that "the Pain Clinic had concerns about [plaintiff's] lack of exercise,"

28  AR 17, Dr. Sobkowicz actually wrote that plaintiff was not attending the clinic's exercise

program "due to her symptomatology," AR 444. Only by such selective readings could the ALJ find that the opinions of Dr. Siciarz and Dr. Sobkowicz "show[] that [plaintiff] is a relatively healthy individual." AR 17. Furthermore, Dr. Sobkowicz's opinion does not corroborate Dr. Siciarz's opinion. Dr. Sobkowicz did not opine on plaintiff's functional limitations, and her "impression" was quite favorable to plaintiff. See AR 444 ("IMPRESSION: 1) Palpitations, 2) Atypical chest pain, 3) History of syncope, 4) Status post Lyme's disease with chronic pain syndrome, 5) Probable fibromyalgia."). In finding that Dr. Siciarz's opinion was consistent with the record, the ALJ appears to have disregarded, inter alia, plaintiff's testimony, Mrs. DeRenne's testimony, Dr. Franco's opinion, and Dr. Sobkowicz's opinion, and looked exclusively to the parts of Dr. Siciarz's opinion and Dr. Sobkowicz's that support the ALJ's belief that plaintiff is "healthy."[4]

Additionally, the ALJ assigned "minimal weight" to Dr. Franco's opinion because it "is not based on specific objective findings found during a thorough examination, but rather draws inferences from [plaintiff's] history and subjective complaints that were garnered over a treatment period of only one month." AR 17. To the extent the ALJ discounted Dr. Franco's opinion because it was based on "a treatment period of only one month," the Court notes that Dr. Franco examined plaintiff a total of 16 times that month, considerably longer than the one time that Dr. Siciarz met with plaintiff. Moreover, contrary to the ALJ's suggestion, Dr. Franco's opinion was indeed based on objective findings. Dr. Franco's treatment of plaintiff included a physical examination, a review of plaintiff's medical records, a discussion of dietary changes, laboratory testing, and various medical treatments and prescriptions. The outpatient records describe the specific testing, treatments, and prescriptions. The ALJ's decision fails to explicitly address Dr. Franco's treatment notes and relies exclusively on the questionnaire. Although the ALJ "need not discuss *all* evidence presented" he "must explain why 'significant probative evidence has been

---

[4] The ALJ's decision suggests that plaintiff also submitted an additional but unsigned Lyme Disease Residual Functional Capacity Questionnaire from a Dr. Miller as well as statements from two former employers and a friend, and that those submissions were favorable to plaintiff. AR 18.

rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981)) (emphasis in original).

In sum, the ALJ did not provide specific and legitimate reasons that are supported by substantial evidence for rejecting the opinion of plaintiff's treating physician, Dr. Franco. While the ALJ may arrive at the same conclusions on remand, remand is necessary in light of the ALJ's selective and inaccurate reading of the examining physicians' opinions and failure to provide specific and legitimate reasons for rejecting Dr. Franco's opinion. See Desrosiers, 846 F.2d at 576 (explaining that this court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion").

4. Remand

The ALJ erred in his evaluation of the medical opinion evidence. Generally, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" Lester, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989))). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Courts retain flexibility, however, in applying this crediting-as-true theory. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good-faith error in that some of his stated reasons for rejecting a physician's opinion were legally insufficient).

Here, the ALJ erred by providing insufficient reasons for rejecting Dr. Franco's opinion. "Such good faith errors inevitably will occur. Reasonable judicial minds sometimes will disagree regarding proper application of the rather imprecise standard of 'specific, legitimate' reasons."

Barbato, 923 F. Supp. at 1278.  "[U]nder the rule in Lester, the [medical] opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting the opinion fall short of the ill-defined 'specific, legitimate' standard." Id. (footnote omitted).  "A reviewing court should have discretion to avoid this inequitable result by remanding the case for further administrative proceedings.  Remand necessitates delay, but the cost of this delay should be balanced against the risk of an erroneous determination." Id.; see also McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health and Human Services was in better position than court to point to evidence in record to provide specific, legitimate reasons to disregard treating physician's opinion).  Accordingly, this Court exercises its discretion to remand this case to the Commissioner for further proceedings.  See McAllister, 888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite specific and legitimate reasons for disregarding medical opinions).

B.      Credibility Assessment

    1.      Legal Standards

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834.  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  See id.

    2.      Relevant Background

Upon considering plaintiff's credibility, the ALJ summarized her testimony as follows:

13

> [Plaintiff] stated that she is still being treated for the pain of Lyme's disease and that the rest of the treatment was completed in March 2009. She reported that medication causes her to be tired, fatigued and mentally confused and having an upset stomach and headaches. She noted that she had a heart rate monitor for three months because of a high heart rate. She stated that she goes to the hospital to get an injection. She reported that she was hospitalized three times: two nights in Fresno when she fainted, two nights in Arizona when she was getting treatment for chest and arm pain of Lyme disease, and one night at Auburn Faith for chest and leg pain. She noted that she has a lot of pain in her legs and chest. She stated that the pain goes from her hip down and that she has muscle spasms in her legs and cannot walk on most days. She reported that she has mental confusion and will forget stuff. She noted that her joints swell in the cold and the she often is in a wheelchair. She stated that she used a golf cart at school and missed a lot of class and was home schooled. She reported that on a bad day (19 in a month) that the pain is so bad that her meals are brought to her in bed and that she takes two-three naps for one hour each and will watch TV. She noted that she has really bad fatigue and chest pain. She noted that on a good day, she reads the Bible, makes her bed, has lunch with friends, does errands, takes naps, has dinner with the family and maybe goes to a movie. She noted that she never lifts anything or not more than a book; can stand for 20-30 minutes; and walk for 15-20 minutes. She stated that she takes Percocet and Ibuprofen. She reported that she goes to the pain clinic and that they have a counselor there. She noted that she would like to work.

AR 15.

The ALJ then concluded that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. Id. In finding plaintiff's statements not credible, the ALJ explained that there is no evidence of nerve damage or muscle wasting. AR 16. The ALJ also noted that plaintiff "successfully completed" various treatments and that she no longer receives treatment specifically for Lyme's disease. Id. Additionally, the ALJ explained that plaintiff continues to take prescribed medication to address her complaints of pain and "manages well" if she adheres to her medication regimen. Id. The ALJ also found that despite any continuing discomfort, plaintiff is able to think, communicate, and act in her own interest, and that the evidence indicated that plaintiff is "healthy." AR 15-16. The ALJ found that plaintiff's subjective complaints and daily activities indicated an ability to perform medium work tasks. AR 18.

////

3. <u>Analysis</u>

The ALJ's decision identifies the portion of plaintiff's testimony that he finds not credible (her claims as to the intensity, persistence, and limiting effects of her pain) and the evidence that he believes undermines plaintiff's complaints. The ALJ also clearly states his reasons for rejecting plaintiff's testimony. Those reasons, however, are not convincing when reviewing the record as a whole and weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See <u>Desrosiers</u>, 846 F.2d at 576.

The ALJ's finding that there is no evidence of nerve damage or muscle wasting appears to be correct. But that finding is not dispositive of the credibility determination. Similarly, that plaintiff "successfully completed" various treatments—misleading in that while plaintiff was successful in completing the treatments, the treatments were not successful in alleviating her pain—does not undermine her complaints of pain after those treatments. That plaintiff no longer receives treatment specifically for Lyme disease does not negate the fact that she was diagnosed with that ailment when she was twelve years old or in any way undermine her present complaints of pain. AR 420.

But the least convincing of the ALJ's reasons for rejecting plaintiff's testimony are his claims that plaintiff "manages well" if she adheres to her medication regimen and that "[f]or the most part, the evidence shows that [plaintiff] is healthy." The evidence rebuts these propositions. <u>See</u> AR 424 (Dr. Siciarz noting plaintiff's "[c]hronic leg pain" and opining that plaintiff's "functional capacity is limited . . . due to pain."); AR 443 (Dr. Sobkowicz describing plaintiff as disabled and her chest pain as atypical, severe, and recurrent); AR 437 (Dr. Franco noting that plaintiff "has seen multiple specialists and been to the ER multiple times with no result"); AR 58-59 (Mrs. DeRenne testifying that she sees plaintiff's expression of pain every day, that plaintiff lives on pain pills and does not function like a normal person, and that on a bad day plaintiff does not get out of bed). The ALJ's explained but unconvincing reasons for rejecting plaintiff's subjective complaints further demonstrates the need for remand.

////

////

1  C.   Mrs. DeRenne's Lay Testimony

2       1.   Legal Standards

3  Lay testimony regarding a claimant's symptoms is competent evidence which the

4  Commissioner must take into account.  Stout, 454 F.3d at 1053; 20 C.F.R. §§ 404.1513(d)(4) &

5  (e), 416.913(d)(4) & (e) (evidence from non-medical sources such as family members, friends,

6  and neighbors, may be used to show the severity of an impairment and how it affects the

7  claimant's ability to work).  The ALJ is required to give specific reasons, germane to the lay

8  witness, to properly discount lay testimony.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir.

9  2009) ("If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that

10 are germane to each witness [and] the reasons germane to each witness must be specific")

11 (internal quotation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999)

12 (ALJ can reject lay testimony "only by giving specific reasons germane to each witness").

13      2.   Relevant Background

14 The ALJ summarized Mrs. DeRenne's testimony:

> [S]he sees the claimant's expression of pain everyday and that the claimant lives on pain pills.  She reported that the claimant does not function like a normal person and maybe has visitors once a week.  She noted that on a bad day, the claimant does not get dressed or get up, but on a good day, she will get dressed.  She stated that the claimant takes frequent naps and that cold weather makes her worse.  She reported that the claimant started with Lyme disease when she was 12-years-old and that made school difficult.  She noted that claimant does not recall things and has a log of mental "fog" and fainting spells.

21 AR at 15.

22 The ALJ did not explicitly reject Mrs. DeRenne's statement as not credible or inconsistent

23 with the medical evidence or otherwise discount it.  Rather, the ALJ summarized Mrs. DeRenne's

24 testimony after summarizing plaintiff's statements, and then explained why he found plaintiff's

25 statements not credible.

26      3.   Analysis

27 Mrs. DeRenne's testimony regarding plaintiff's symptoms is competent evidence which

28 the Commissioner must take into account, and the ALJ erred in not directly addressing Mrs.

16

DeRenne's credibility or the probative weight of her statements. However, such error is harmless when "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay-witness's] claims." Molina v. Astrue, 674 F.3d 1104, 1121-22 (9th Cir. 2012) (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)); see also Valentine, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). As explained supra, the ALJ erred in finding plaintiff not credible. It is evident, then, that none of those reasons referred to by the ALJ in discrediting plaintiff's testimony may be used to discredit Mrs. DeRenne's testimony, either. According to the Ninth Circuit, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056 (reviewing cases). Because the Court cannot confidently reach that conclusion, the Court cannot find that the ALJ's failure to discuss the lay evidence offered by Mrs. DeRenne is harmless error.

Though remand for an award of benefits is not appropriate, this action must be remanded for reexamination of the lay witness testimony. Mrs. DeRenne appears to have had substantial opportunities to observe and interact with plaintiff, and her observations required a more thorough consideration than that reflected in the ALJ's decision. On remand, an ALJ must either credit Mrs. DeRenne's testimony or provide truly "germane" and legitimate reasons its rejection. If the ALJ accepts the testimony, plaintiff's own credibility, plaintiff's residual functional capacity, and the ultimate question of disability must be reexamined as well.

D.   Plaintiff's Remaining Arguments

Plaintiff also contends that the ALJ erred in failing to obtain testimony from a vocational expert, failing to establish that there is other work in the national economy that plaintiff can perform, and ignoring and failing to reference evidence in the decision. Because the Court finds

that this matter should be remanded for the aforementioned reasons, the Court declines to consider plaintiff's remaining arguments.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted in part;
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is denied;
3. This matter is remanded for further proceedings consistent with this order.

DATED: August 4, 2014

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE